IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JIA JEWELRY IMPORTERS : | | |
| OF AMERICA, INC. : | | |
| : | | |
| v. : | Civil No. CCB-11-982 | |
| : | | |
| PANDORA JEWELRY, LLC : | | |
| : | | |

**MEMORANDUM**

JIA Jewelry Importers of America, Inc. ("JIA") initiated this suit for a declaratory judgment regarding the patent rights of Pandora Jewelry, LLC ("Pandora") on October 4, 2010, in the Eastern District of Texas. The case was transferred to the District of Maryland pursuant to 28 U.S.C. § 1404(a). Now pending before this court is a motion by Pandora to dismiss the suit for lack of subject matter jurisdiction. The issues in this case have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the motion to dismiss will be granted.

**BACKGROUND**

Pandora Jewelry, a Maryland-based subsidiary of the Danish company Pandora Holding ApS, markets and sells jewelry products in the United States. Pandora's charm jewelry has been the company's most popular product, and Pandora has patented the particular design of its charm bracelets and necklace strands. (McDonald Decl. ¶ 6-7). The patent, U.S. Patent No. 7,007,507 (the "'507 patent") is the subject of this lawsuit.

1

On August 25, 2010, an entity with the name of JIA Jewelry Importers of America, Inc., filed a Certificate of Formation with the Secretary of the State of Texas. Shortly thereafter, JIA filed suit in the Eastern District of Texas seeking a declaratory judgment that Pandora's '507 patent is invalid and that it would not be infringed if JIA were to manufacture and sell exact replicas of Pandora's jewelry products. The original complaint included a claim for false marking that was later dropped in the amended complaint filed on November 24, 2010.

In its amended complaint, JIA alleges it has "obtained a quotation for manufacture of exact copies" of Pandora's jewelry and if it were not for the potential of a patent infringement lawsuit, JIA "would be in a position to begin the stated activity within a few weeks." (Am. Compl. ¶3). JIA does not allege that it has had any contact with Pandora, or that Pandora has made any statements about a potential patent infringement suit. Rather, JIA contends that it has a reasonable apprehension of such a suit because Pandora has previously filed suit against an unrelated company, Bajul Imports Inc., for infringement of the '507 patent. (*Id.* at ¶4). To relieve this apprehension, JIA requests that the court issue a declaratory judgment holding that the '507 patent is invalid and will not be infringed by JIA.

Responding to JIA's amended complaint, Pandora filed both a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). JIA timely filed responses in opposition, and Pandora subsequently filed reply briefs. The motion to transfer venue to this court was granted by Judge Leonard Davis of the Eastern District of Texas, and the motion to dismiss is decided here.

**ANALYSIS**

Plaintiffs have the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins, Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In reviewing a Fed. R. Civ. P. 12(b)(1) motion, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A court should grant a Rule 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.,* 166 F.3d at 647. When the jurisdictional facts are intertwined with questions of law, however, it may be appropriate to resolve the entire factual dispute at a later proceeding on the merits. *See United States v. North Carolina*, 180 F.3d 574, 580-81 (4th Cir. 1999); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Bryant v. Clevelands, Inc.*, 193 F.R.D. 486, 488 (E.D. Va. 2000).

A suit for a declaratory judgment of patent non-infringement must meet the jurisdictional requirements of Article III of the Constitution. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The "case of actual controversy" requirement in the Act refers to "the types of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937)). "Thus, as long as the suit meets the case or controversy requirement of Article III, a district court may have jurisdiction over a declaratory judgment action." *Prasco LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008) (citing *Teva Pharm. USA, Inc. v.*

*Novartis Pharm. Corp.*, 482 F.3d 1330, 1340 (Fed. Cir. 2007)).[1]

The Supreme Court has not drawn a bright line between declaratory judgment actions that satisfy the case-or-controversy requirement and those that do not. *MedImmune*, 549 U.S. at 127. Rather, a court must consider the particular facts of each case, and weigh "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Federal Circuit, which has jurisdiction over all patent appeals,[2] has interpreted this language as an "all-the-circumstances" test that is "more lenient" than the prior inquiry applied by the lower courts. *Micron*, 518 F.3d at 902.[3] But while the all-the-circumstances test "facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases." *Micron*, 518 F.3d at 902, "a lowered bar does not mean no bar at all." *Hewlett-Packard v. Acceleron* LLC, 587 F.3d 1358, 1362 (Fed. Cir. 2009).

The Federal Circuit directly applied the all-the-circumstances test to facts analogous to those presented here in *Association for Molecular Pathology v. U.S. Patent and Trademark*

---

[1] A court, however, retains the discretion to avoid ruling on an action for declaratory judgment even if the case or controversy requirement is met. *MedImmune*, 549 U.S. at 136 ("The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' 28 U.S.C. § 2201(a), not that it *must* do so.") (emphasis in original); *Micron Tech. Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 903 (2008) ("The word 'may' within the language of the Declaratory Judgment Act means that a court has discretion to accept a declaratory judgment action in the first place.").

[2] 28 U.S.C. 1295(a)(1); *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 829 (2002).

[3] Prior to *MedImmune*, the Federal Circuit had applied a two-part inquiry, asking whether the plaintiff (1) had a "reasonable apprehension" of suit for patent infringement, and (2) had undertaken "'meaningful preparation' to conduct potentially infringing activity." *Prasco*, 537 F.3d at 1336 (citation omitted). *MedImmune* specifically rejected the "reasonable apprehension" prong of this test "as the sole test for jurisdiction." *Id.* at 1336. Rather, proving a reasonable apprehension of suit is now "one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test." *Id.* Similarly, "whether there has been meaningful preparation to conduct potentially infringing activity remains an important element in the totality of the circumstances which must be considered." *Cat Tech*, 528 F.3d at 880.

*Office*, --- F.3d ---, 2011 WL 3211513 (Fed. Cir. 2011). In that case, the panel concluded that "[s]imply disagreeing with the existence of a patent or even suffering an attenuated, nonproximate, effect from the existence of a patent does not meet the Supreme Court's requirement for an adverse legal controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at *14 (citing *MedImmune*, 549 U.S. at 127). Rather, to meet the requirement, "a declaratory judgment plaintiff must allege "both (1) an affirmative act by the patentee related to the enforcement of his patent rights, *SanDisk Corp. v. STMicroelecs., Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007), and (2) meaningful preparation to conduct potentially infringing activity, *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008)." *Ass'n for Molecular Pathology*, --- F.3d ---, 2011 WL 3211513, at *9.

JIA argues that the "affirmative act" prong of this declaratory judgment test does not require an act "by the Defendant directed *towards* the Plaintiff." (Pl.'s Resp. to Mot. to Dismiss at 4) (emphasis in original). Supporting this conclusion, JIA contends that "[a] requirement that there be a specific, affirmative act directed towards the plaintiff to establish standing to seek a declaratory judgment of patent invalidity would be inconsistent with the Supreme Court's mandate that the Court examine 'the facts alleged, under all the circumstances,' in assessing the existence of a case or controversy." *Id.* (citing *MedImmune*, 549 U.S. at 127).[4] Instead, JIA claims, any affirmative act related to enforcement of patent rights will do. Under this theory, it would not be fatal to JIA's standing in this case that Pandora has made no licensing request or threat to sue, nor any communication whatsoever to JIA with regard to the '507 patent.

---

[4] This language, along with the rest of the first six pages of plaintiff's nine-page Response to the Motion to Dismiss, appears to have been reproduced word for word, without attribution, from the district court decision that was later overruled in *Ass'n for Molecular Pathology. Compare* Pl.'s Resp. to Mot. to Dismiss at 1-6, *with Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office,* 669 F.Supp.2d 365, 385-88 (S.D.N.Y. 2009). Plaintiff's

5

Pandora's suit against the unrelated company, Bajul Imports, for infringement of the '507 patent, would be sufficient to provide the necessary affirmative act.

In *Association for Molecular Pathology*, however, the Federal Circuit foreclosed this line of reasoning. There, several university researchers and associations of researchers brought suit for declaratory judgment that a corporation's patents relating to human genetics were invalid. The defendant corporation had previously initiated three lawsuits for patent infringement based on the patents at issue in the case, though none of these suits were against the plaintiffs. The defendant had also sent cease-and-desist letters that solicited licensing agreements, but only to three of the individual plaintiffs. The district court concluded that all plaintiffs had standing to bring the declaratory judgment action, even though many had not been the target of any suit, threat or communication by the defendant. *Ass'n for Molecular Pathology,* 669 F.Supp.2d at 388-90. The Federal Circuit disagreed. According to the panel, "[t]he district court failed to limit its jurisdictional holding to affirmative acts by the patentee *directed at specific Plaintiffs*." --- F.3d ---, 2011 WL 3211513, at *14 (emphasis added). Only the plaintiffs against whom the defendant corporation had directed some affirmative act could meet the fundamental jurisdictional requirement. *See also Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010) (holding that "while prior litigation is a circumstance to be considered in assessing the totality of circumstances, the fact that [the defendant patent owner] had filed infringement suits against other parties for other products does not, *in the absence of any act directed toward [the declaratory judgment plaintiff]*, meet the minimum standard discussed in *MedImmune*").

counsel will be asked to explain this circumstance by a separate letter to be filed with the court.

JIA has not alleged any action by Pandora that could be construed as an affirmative act directed toward JIA. The only Pandora acts alleged in the complaint are (1) the act of patenting the techniques at issue and thus "alleg[ing] it is the owner of the entire right, title and interest in [the '507 patent]," (Am. Compl. ¶4), and (2) the single suit for infringement of the '507 patent that Pandora brought against Bajul Imports, a company that is "similarly situated," but unrelated, to JIA. (*Id.*). Neither of these acts is in any way "directed at" JIA.

Without an affirmative act directed at the plaintiff, the Federal Circuit's decisions in *Association for Molecular Pathology* and *Innovative Therapies* mandate dismissal. No further consideration of the all-the-circumstances test is necessary. The court need not determine whether JIA's request for a quote for the manufacture of a replica Pandora product would alone be sufficient to constitute the minimum meaningful preparation to conduct the infringing activity. Nor is it necessary to weigh the propriety of exercising discretion to avoid hearing this action, which a court may do even when an action otherwise meets the jurisdictional minimum. *See supra* note 1.

In summary, JIA has failed to satisfy the all-the-circumstances test as explained by the Federal Circuit; thus it has failed to allege the existence of a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment under the Supreme Court's ruling in *MedImmune*. This court does not have subject matter jurisdiction, and the case must be dismissed.

A separate order follows.

| September 29, 2011 | /s/ |
|---|---|
| Date | Catherine C. Blake |
| | United States District Judge |